NO. 23-1454

_____

# In the United States Court of Appeals for the Fourth Circuit

_____

DON BLANKENSHIP,
*Plaintiff-Appellant,*

v.

DONALD TRUMP, JR.,
*Defendant-Appellee,*

And

DOES 1-50 INCLUSIVE,
*Defendant.*

On Appeal from the United States District Court
for the Southern District of West Virginia at Charleston,
Honorable John T. Copenhaver, Jr., Senior U.S. District Court Judge,
No. 2:19-cv-00549

_____

## APPELLANT'S REPLY BRIEF

_____

JEFFREY SIMPKINS
SIMPKINS LAW OFFICE PLLC
102 East Second Avenue
Williamson, West Virginia 25661
304.235.2735
simpkinslawoffice@gmail.com

*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION .................................................................................. 1

ARGUMENT ........................................................................................ 2

I.    THE GRANT OF SUMMARY JUDGMENT WAS INCORRECT ... 2

    A.   Defamation Claim ...................................................... 2

    B.   False Light Invasion of Privacy Claim ................................ 13

    C.  Civil Conspiracy Claims ................................................ 15

II.   THE JUDGMENT SHOULD NOT BE AFFIRMED ON ALTERNATIVE GROUNDS ......................................................... 16

    A.   Material Falsity ........................................................ 16

    B.   Intent to injure ....................................................... 20

III.  THE COURT OF APPEALS IS NOT CONSTRAINED BY UNJUST LAWS ................................................................. 21

CONCLUSION ................................................................................... 24

STATEMENT REGARDING ORAL ARGUMENT ................................. 25

CERTIFICATE OF COMPLIANCE ...................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................ 3

*Ballock v. Costlow*,
2017 WL 9620421 (N.D. W. Va. Dec. 6, 2017) ..................................... 18

*Berisha v. Lawson*,
141 S. Ct. 2424 (2021) ............................................................ 1

*Blankenship v. Napolitano*,
451 F. Supp. 3d 596 (S.D. W. Va. 2020) ........................................ 17

*Bowers v. Hardwick*,
478 U.S. 186 (1986) .............................................................. 2

*Brown v. Board of Education of Topeka*,
347 U.S. 483 (1954) ............................................................. 23

*Bustos v. A&E Television Networks*,
646 F.3d 762 (10th Cir. 2011) ................................................... 19

*Church of Scientology Intern. v. Daniels*,
992 F.2d 1329 (4th Cir. 1993) ............................................... 12, 13

*Colcord v. Gazette Pub. Co.*,
145 S.E. 751 (1928) ............................................................. 18

*Crump v. Beckley Newspapers, Inc.*,
320 S.E.2d 70 (W. Va. 1983) .................................................... 14

*Curtis Publishing Co. v. Butts*,
388 U.S. 130 (1967) ............................................................. 4

*Dunn v. Rockwell*,
689 S.E.2d 255 (W. Va. 2009) ................................................... 15

*Erie R.R. Co. v. Tompkins,*
    304 U.S. 64 (1938) ................................................................. 18

*Goldwater v. Ginzburg,*
    414 F.2d 324 (1969) ................................................................. 4

*Harte-Hanks Communs. v. Connaughton,*
    491 U.S. 657 (1989) ................................................................. 11

*Henick v. Fast-Track Anesthesia Assocs., LLC,*
    2012 WL 5908939 (W. Va. Nov. 26, 2012) ........................................... 20

*Hinerman v. Daily Gazette Co.,*
    423 S.E.2d 560 (1992) ............................................................. 4

*Kaelin v. Globe Commc'ns Corp.,*
    162 F.3d 1036 (9th Cir. 1998) ..................................................... 19

*Korematsu v. United States,*
    323 U.S. 214 (1944) ................................................................ 23

*Lee v. Town of Seaboard,*
    863 F.3d 323 (4th Cir. 2017) ...................................................... 3

*McLaughlin v. City of Canton, Miss.,*
    947 F. Supp. 954 (S.D. Miss. 1995) ............................................... 17

*Milan v. Long,*
    88 S.E. 618 (1916) ............................................................ 18, 20

*Myers v. Telegraph,*
    773 N.E.2d 192 (2002) ............................................................ 17

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1974) ..................................................... 1, 2, 24, 25

*Northern Securities Co. v. United States*,
   193 U.S. 197 (1904) .................................................................. 2

*Plessy v. Ferguson*,
   163 U.S. 537 (1896) ............................................................... 23

*Richard H. v. Rachel B*,
   2018 WL 2277775 (W. Va. May 18, 2018) ........................... 18

*Russell v. Microdyne*,
   65 F.3d 1229 (4th Cir. 1995) .................................................. 3

*Sosebee v. Murphy*,
   797 F.2d 179 (4th Cir. 1986) ................................................. 3

*Tah v. Global Witness Publ'g, Inc.*,
   991 F.3d 231 (2021) ............................................................... 1

*Taylor v. W. Va. Dep't of Health & Human Res.*,
   788 S.E.2d 295 (2016) .......................................................... 14

## Rules

Fed. R. Civ. P. 56(a) ................................................................. 11

## Other Authorities

Evita Duffy-Alfonso, *Putin Handed His Political Rival A Lighter Sentence Than Biden Wants To Give Trump*, The Federalist (Aug. 8, 2023), https://thefederalist.com/2023/08/08/putin-handed-his-political-rival-a-lighter-sentence-than-biden-wants-to-give-trump/... 10

https://founder.archives.gov/documents/Jefferson/01-15-02-0259 ......... 21

https://www.africa.upenn.edu/Articles_Gen/Letter_Birmingham.html ................................................................................................. 24

Graham Kates et al., *Georgia indicts Trump, 18 allies on RICO charges in election interference case. Here are the details.*, CBS News (Aug. 15, 2023), https://www.cbsnews.com/news/trump-charges-fulton-county-georgia-election-investigation/ ...................................... 10

Wayne R. Lafave, *Criminal Law* (4th ed. 2003) ..................................... 17

Law2.umkc.edu/faculty/projects/ftrials/Nuremberg/Alstoetter.htm# Commentary ........................................................................ 22

Alberto Luperon, *Mark Jensen Found Guilty in Retrial for Murdering Wife Julie Jenson*, Law & Crime (Feb. 1, 2023), https://lawandcrime.com/live-trials-current/mark-jensen/mark-jensen-found-guilty-in-retrial-for-murdering-wife-julie-jensen/ ...................... 9

Restatement (Second) of Torts (1977) ..................................................... 14

*West Virginia Criminal Law Jury Instructions Sixth Edition*, https://www.lb7.uscourts.gov/wvajury.pdf ............................................ 8

## INTRODUCTION

Appellant Don Blankenship ("Blankenship") adduced compelling circumstantial proof of actual malice. However, the district court's misguided examination of the evidence and obstinate disregard of the permissible inferences to be drawn therefrom resulted in an erroneous grant of summary judgment to Appellee Donald Trump Jr. ("Trump Jr."). Alternatively, if the district court correctly applied the summary judgment standard and the operative facts were not sufficient to avoid summary judgment, then the actual malice regime is irredeemably flawed and in dire need of being revisited. The Court of Appeals may not be vested with authority to overrule *Sullivan*. But no panel of judges is obliged to uphold common law that is an affront to the Constitution.

The rule of law must be governed by a law of rules. Our nation's legal rubric is the Constitution. In contrast, the actual malice test is a synthetic judicial invention with "no relation to the text, history, or structure of the Constitution." *Berisha v. Lawson,* 141 S. Ct. 2424, 2425 (2021) (quoting *Tah v. Global Witness Publ'g, Inc.,* 991 F.3d 231, 251 (2021) (Silberman, J., dissenting). It is a dereliction of duty for the judiciary to continue perpetuating a false constitutional doctrine. Indeed,

our justice system "is most vulnerable and comes nearest to illegitimacy when it deals with judge-made constitutional law having little or no cognizable roots in the language or design of the Constitution." *Bowers v. Hardwick,* 478 U.S. 186, 194 (1986).

Defamation jurisprudence is a dumpster fire ignited by judges acting as politicians in robes. A convoluted framework for deciding summary judgment fans the flames of judicial overreach. The actual malice requirement is bad public policy camouflaged as constitutional law. In the final analysis, *Sullivan* is a step backward for democracy. To quote Justice Oliver Wendell Holmes:

> Great cases, like hard cases, make bad law. For great cases are called great, not by reason of their importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts judgment.

*Northern Securities Co. v. United States,* 193 U.S. 197, 400-401 (1904) (Holmes, J., dissenting).

## ARGUMENT

## I.  THE GRANT OF SUMMARY JUDGMENT WAS INCORRECT.

### A.  Defamation Claim

A reasonable jury considering the evidence *in toto* and the

2

permissible inferences to be drawn therefrom could find with "convincing clarity" that Trump Jr. published a defamatory falsehood about Blankenship with actual malice. But the district court failed to "view[] the evidence in the light most favorable" to Blankenship. *Lee v. Town of Seaboard,* 863 F.3d 323, 327 (4th Cir. 2017). Moreover, the district court improperly resolved disputed facts and weighed the evidence in favor of Trump Jr. *Russell v. Microdyne,* 65 F.3d 1229, 1239 (4th Cir. 1995). Finally, the district court inappropriately determined that Trump Jr.'s deposition testimony was credible and even endeavored to reinforce his credibility with speculation. *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). In sum, the district court violated the triumvirate of admonitions given in *Anderson* by making credibility determinations, weighing the evidence, and drawing impermissible inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

Trump Jr.'s mens rae can be deduced as a logical consequence of the following facts:

- Trump Jr. tweeted:[1]

---

[1] Twitter has since been rebranded as "X." It has been suggested that tweets will now be called "X's." Due to the uncertainty, former terms such as "Twitter," "tweet," and "tweeted" will be used herein.

> I hate to lose. So I'm gonna go out on a limb here and ask the people of West Virginia to make a wise decision and reject Blankenship!
>
> No more fumbles like Alabama. We need to win in November. #wv #wvpol

JA184; JA263.

Trump Jr.'s stated purpose was to derail Blankenship's campaign. JA206. The usage of the phrase "reject Blankenship" with an exclamation point indicates exigency and attests to Trump Jr.'s determination in accomplishing his goal. "There is no doubt that evidence of . . . motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity." *Goldwater v. Ginzburg,* 414 F.2d 324, 342 (1969); *see, e.g., Curtis Publishing Co. v. Butts,* 388 U.S. 130, 158 (1967); *see also Hinerman v. Daily Gazette Co.,* 423 S.E.2d 560, 573 (1992) (partisanship and motive are relevant to the "determination of whether there was a subjective realization of falsity or recklessness").

- CNN reporter Dan Merica thereafter posted the following tweet ("Merica's tweet"):

> Trump's son urges West Virginia Republicans to reject Blankenship, who responds by labeling @DonaldTrumpJr part of the "establishment."

JA192; JA264.

Merica's tweet contained a link to a CNN news article ("quote tweet article") written by Merica about Trump Jr.'s earlier tweet. JA187-189. Merica reported that Blankenship "had <u>just recently finished serving</u> a yearlong sentence following a misdemeanor conviction." JA187. The underlined phrase "<u>just recently finished serving</u>" was an embedded link[2] to a prior CNN story ('linked article') detailing that 29 miners were killed by the Upper Big Branch ("UBB") mine explosion. JA201-203. The quote tweet article also included a statement from Blankenship responding to Trump Jr.'s tweet: "The establishment is doing everything they can to keep Joe Manchin in office." JA187.

- Trump Jr. then posted another tweet ("quote tweet") sharing Merica's tweet as well as a link to the quote tweet article:

> Ha, now I'm establishment? No, I'm realistic & know the first thing Manchin will do is run ads featuring the families of those 29 miners killed due to actions that sent you to prison. Can't win the

---

[2] It is unclear why the district court did not notice the observable link ("<u>just recently finished serving</u>") in the quote tweet article. JA187.

5

general… you should know that & if others in the GOP won't say it, I will.

JA192; JA265.

The district court erroneously ruled there was no evidence showing that Trump Jr. read the quote tweet article reporting Blankenship's misdemeanor conviction or the linked article detailing that 29 miners died in the UBB mine explosion. JA276. However, a reasonable jury applying critical thinking and common sense could find with convincing clarity from the context and subject matter of Trump Jr.'s quote tweet that he read both articles. To illustrate, Trump Jr.'s first tweet did not reference the incumbent Democrat Senator Joe Manchin. Whereas the quote tweet article cites Blankenship's comment about "[t]he establishment [] doing everything it can to keep Joe Manchin in office." JA187. Furthermore, the number of fatalities in the UBB mine tragedy was not mentioned in Trump's first tweet, Merica's tweet, or the quote tweet article. Yet the linked story precisely did so. In sum, neither Manchin nor the deceased miners was fodder for a Trump Jr. tweet until the quote tweet article was published.

The hostile tone of the quote tweet is beyond debate. The term "ha" was obviously used by Trump Jr. to express outrage. Plus, the quote

6

tweet was very insensitive. It was exceedingly cruel to both Blankenship and the families of the deceased miners for Trump Jr. to exploit the UBB mine disaster for political purposes. Blinders could not conceal Trump Jr.'s overt hostility.

Trump Jr.'s ego was on full display in the quote tweet. The remark that he would say what others in the GOP would not say is quintessential arrogance. Tellingly, none of Blankenship's opponents in the primary ever falsely labeled him as a "felon." Trump Jr. never apologized for it. The text, antagonism, and zeal of the quote tweet clearly indicate that Trump Jr. was personally invested in the ongoing adversarial discourse. It is therefore rational to infer that Trump Jr. read the quote tweet article and thereby knew that Blankenship was a misdemeanant.

• A Twitter follower of Trump Jr. with the Twitter handle @Emberr posted a reply tweet to the quote tweet: "Don't think Manchin will do that. His ads are usually about him." JA195; JA 265. Trump Jr. reacted with the following tweet ("defamatory reply tweet"): "He's probably never run against a *felon*." JA195; JA266.

Trump Jr. had nearly three million Twitter followers when the defamatory reply tweet was posted. Hence, it is a gross understatement

7

for Trump Jr. to minimize his smear as a "fleeting reference." The damage to Blankenship's reputation from being falsely denounced as a "felon" by the son of POTUS was permanent and irreparable. What happens on social media, stays on social media.

In West Virginia, a judge's final charge to the jury during a criminal trial includes the following instruction:

> You are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.[3]

The district court disregarded the same type of permissible inferences that are routinely drawn in criminal cases. For example, during a burglary trial, the prosecution might introduce digital evidence from the defendant's smartphone to show there was a search of the victim's address on Google Maps™ in street view mode. The prosecution would argue to the jury that the digital evidence was probative to show identity, intent, preparation, plan, and/or knowledge. The trial court

---

[3] *West Virginia Criminal Jury Instructions Sixth Edition* § 4.07 (2003), https://www.lb7.uscourts.gov/wvajury.pdf.

8

would inevitably permit the jury to infer from the digital evidence that the defendant engaged in reconnaissance before burglarizing the victim's dwelling.

Recently, Wisconsin prosecutors used electronically stored information ("ESI") to obtain a murder conviction.[4] The defendant was charged with murdering his wife by antifreeze poisoning. *Id.* A digital forensics expert testified that internet searches for terms such as "drugs," "poisoning," "toxicology," and "suicide" were found on the defendant' computer. *Id.* The jury was permitted to draw critical inferences from the ESI evidence, including that the defendant conducted the internet searches to ascertain how to kill someone with an undetectable poison.

Correspondingly, Trump Jr. left an electronic trail of subsidiary facts from which multiple permissible inferences could be drawn. First, the quote tweet had a link to the quote tweet article which accurately reported Blankenship's misdemeanor conviction. Second, the quote tweet article had an embedded link to the linked article specifying that 29

---

[4] Alberto Luperon, *Mark Jensen Found Guilty in Retrial for Murdering Wife Julie Jenson,* Law & Crime (Feb. 1, 2023), https://lawandcrime.com/live-trials-current/mark-jensen/mark-jensen-found-guilty-in-retrial-for-murdering-wife-julie-jensen/.

9

miners passed away in the UBB mine explosion. Third, central themes in the quote tweet, namely potential Manchin campaign tactics and the UBB mine explosion death toll, were absent from Trump Jr.'s first tweet.

The permissible inferences to be drawn are (1) that Trump Jr. read both articles; (2) that Trump Jr.'s quote tweet was precipitated by information from both articles; and (3) that Trump Jr. either knew that Blankenship was not a felon when the defamatory reply tweet was posted or that Trump Jr. purposely avoided the truth. Instead, these cogent inferences were nonsensically deemed as "speculative" by the district court. There is no legitimate basis to have a higher admissibility standard for inferences in a public figure defamation case than in a murder case. Incredibly, Trump Jr. enjoys more protection from trial under the law than his father who presently faces a total of 78 criminal charges and 641 years behind bars.[5]

---

[5] Evita Duffy-Alfonso, *Putin Handed His Political Rival A Lighter Sentence Than Biden Wants To Give Trump*, The Federalist (Aug. 8, 2023), https://thefederalist.com/2023/08/08/putin-handed-his-political-rival-a-lighter-sentence-than-biden-wants-to-give-trump/. Trump has since been indicted in Georgia for 13 additional felony charges, including racketeering. Graham Kates et al., *Georgia indicts Trump, 18 allies on RICO charges in election interference case. Here are the details.*, CBS News (Aug. 15, 2023), https://www.cbsnews.com/news/trump-charges-fulton-county-georgia-election-investigation/.

The subsidiary facts and the permissible inferences to be drawn therefrom were "unmistakably sufficient to support a finding of actual malice." *Harte-Hanks Communs. v. Connaughton,* 491 U.S. 657, 693 (1989). Conversely, Trump Jr. failed to present any evidence to corroborate his dubious claim that he had seen Blankenship being called a felon "pretty much everywhere." JA156; JA277. In fact, Trump Jr. could not identify a single speaker, telecast, network, writer, article, or newspaper to verify that he viewed or heard any defamatory publication falsely referring to Blankenship as a "felon." The failure of Trump Jr. to recollect any facet of the who, what, when, or where raises a genuine dispute of material fact. Fed. R. Civ. P. 56(a).

Trump Jr. dependance on "bandwagon" reasoning is unavailing. The nine prior media false references to Blankenship as a "felon" do not refute the evidence proving that Trump Jr. published the defamatory reply tweet with actual malice. Prevalence has no bearing on validation. Otherwise, the Earth would have defied physics and made itself flat to accommodate the popular "flat earth" belief for most of human history.

The district court attempted to bolster Trump Jr.'s credibility by attributing probative value to extraneous defamations. This was

intellectual dishonesty, if not shadow advocacy. But the "bandwagon fallacy" works both ways. Trusted news outlets like the New York Times, Wall Street Journal, USA Today, AP, Reuters, CBS News, Bloomberg News, PBS Newshour, NPR, Politico, The Hill, and a multitude of others correctly, and copiously, reported that Blankenship was convicted of a misdemeanor. Under Trump Jr.'s reasoning, the countless media usages of the word "misdemeanor" to describe Blankenship's conviction reinforce the fact that the defamatory reply tweet was a deliberate falsehood.

Trump Jr.'s reliance on *Church of Scientology International* is misplaced and ironically undermines his defense. In that case, the Church of Scientology International ("CSI") ran a series of full page advertisements in USA Today criticizing the use of drugs for the treatment of mental illness and depression. *Church of Scientology Intern. v. Daniels,* 992 F.2d 1329, 1330 (4th Cir. 1993). The ads targeted the drug Prozac and its manufacturer Eli Lilly Company ("Eli Lilly"). *Id.* Daniels, who was the Vice President Eli Lilly, requested and got an audience with the USA Today editorial board. *Id.* at 1331. The following day, the newspaper quoted Daniels as saying that CSI was not a church, but rather a commercial enterprise. *Id.* Daniels further stated: "Every judge

12

and every investigative journalist who has ever looked at it has come away with that conclusion." *Id.* CSI sued Daniels for defamation.

Unlike Trump Jr., Daniels presented as evidence "numerous" magazine and newspaper articles about Scientology that he had read beforehand. *Church of Scientology Intern.,* 992 F.2d at 1333. Daniels referenced specific information from "reputable publications" which "comprised an impressive collection of research about Scientology." *Id.* In addition, "many of the articles quoted court opinions" and the "revocation of [CSI's] tax-exempt status." *Id.* at 1334.

Contrariwise, Trump Jr. failed to identify any speaker, telecast, network, writer, article, or newspaper to give credence to his suspect claim that he had seen Blankenship being called a felon "pretty much everywhere." JA156. Uncorroborated, self-serving statements have no evidentiary value. Thus, the district court erred by not unqualifiedly rejecting Trump Jr.'s factually impoverished deposition testimony. Otherwise, all that remained in Trump Jr.'s arsenal were generic legal arguments, rhetorical hyperbole, and tired clichés.

## B.    False Light Invasion of Privacy Claim

Blankenship's focus on the pivotal issue of actual malice should not

13

be construed as a waiver of his false light invasion of privacy claim. The actual malice requirement applies to false light invasion of privacy claims prosecuted by public figure plaintiffs. *See Crump v. Beckley Newspapers, Inc.,* 320 S.E.2d 70, 88 (W. Va. 1983). The district court found that the evidence was insufficient to prove actual malice. Consequently, Blankenship need not address the remaining elements of his false light invasion of privacy claim.

To sustain his false light invasion of privacy claim, Blankenship must prove that: (1) Trump Jr. gave publicity to a matter concerning Blankenship that placed Blankenship before the public in a false light, (2) the publicity was widespread, (3) the mater of the publicity was false, (4) the false light in which Blankenship was placed would be "highly offensive to a reasonable person," and (5) Trump Jr. "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which [Blankenship] would be placed." *Taylor v. W. Va. Dep't of Health & Human Res.,* 788 S.E.2d 295, 315-16 (2016) (citing Restatement (Second) of Torts § 652E (1977)).

Trump Jr.'s defamatory reply tweet satisfies every element of a false light invasion of privacy claim. First, the defamatory reply tweet

was publicity that placed Blankenship before the public in a false light. Second, the defamatory reply tweet was disseminated to Trump Jr.'s nearly three million Twitter followers and was the topic of national media reports. Third, Trump Jr.'s reference to Blankenship as a "felon" was a false statement of fact. Fourth, being falsely smeared as a felon on Twitter would be highly offensive to any reasonable person. Fifth, Blankenship has adduced damning evidence proving that Trump Jr. was subjectively aware of the falsity of the defamatory reply tweet or purposely avoided the truth.

### C. Civil Conspiracy Claims

The civil conspiracy claims have not been abandoned either. In West Virginia, "[a] civil conspiracy is not a *per se* stand-alone cause of action." *Dunn v. Rockwell,* 689 S.E.2d 255, 269 (W. Va. 2009). Blankenship's civil conspiracy claims were entirely premised on the underlying dismissed defamation and false light invasion of privacy claims. JA25. Regardless, there is persuasive evidence that Trump Jr. conspired with Republican Party operatives to defame and cast Blankenship in a false light before the public. Trump Jr. posted the defamatory reply tweet while meeting with Republican Party officials

15

and operatives. The defamatory reply tweet was an unlawful means to achieve the object of the civil conspiracies (i.e., to prevent Blankenship from winning the primary).

## II. THE JUDGMENT SHOULD NOT BE AFFIRMED ON ALTERNATIVE GROUNDS.

### A.  Material Falsity

Trump Jr. marginalizes the "lengthy recitation" in the opening brief about Blankenship's wrongful prosecution. But prior to publishing the defamatory reply tweet, Trump Jr. propagandized a grievously false narrative that the 29 miners who perished in the UBB mine explosion were "killed due to actions that sent [Blankenship] to prison." JA192; JA265. Blankenship was compelled to address Trump Jr's callous disregard for the truth. To quote George Washington: "Truth will ultimately prevail where there is pains to bring it to light."

Trump Jr's reference to Blankenship in the defamatory reply tweet as a "felon" was materially false:

> The term "felon" is an objective label with a clear legal meaning – having been convicted of a crime with a term of imprisonment of more than one year. A person either is or is not a felon; there is no in between room for "substantial truth." The United States Code clearly outlines the difference between a felony and a misdemeanor even when

16

> the criminal statute does not clarify the category of the crime. The different consequences associated with being a felon, including that "felons can suffer numerous restrictions on their constitutional rights," further underscore that the two categories are distinct.

*Blankenship v. Napolitano,* 451 F. Supp. 3d 596, 617 (S.D. W. Va. 2020); *see also McLaughlin v. City of Canton, Miss.,* 947 F. Supp. 954, 975 (S.D. Miss. 1995) (finding that "[t]he historical distinction between felonies and misdemeanors is more than semantic. Traditionally, dire sanctions have attached to felony convictions which have not attached to misdemeanor convictions. Many of these sanctions are in force today. Disenfranchisement was, and remains, one such sanction. Another such sanction is that which prohibits felons from owning or possessing firearms."). Furthermore, a felony conviction may serve as grounds for divorce, annulment of a professional license, or prohibition from jury service or public office. Wayne R. Lafave, *Criminal Law* 36 n.140 (4th ed. 2003). "[S]ociety at large views a 'felon' far differently than a person who has committed an offense resulting in a misdemeanor conviction." *Myers v. Telegraph,* 773 N.E.2d 192, 198 (2002). In sum, "the likelihood of damage to one's reputation by the false attribution of felonious conduct approaches a near certainty." *Id.*

17

Federal courts exercising jurisdiction through diversity of citizenship must apply state substantive law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). Hence, West Virginia law is controlling. Statements falsely charging a person with the commission of a felony are actionable as defamation per se in West Virginia. *See Milan v. Long,* 88 S.E. 618, 619 (1916); *see also Colcord v. Gazette Pub. Co., 145* S.E. 751, 753 (1928) ("[I]mputing to another a crime . . . is actionable per se, without proof of damages."); *Ballock v. Costlow,* 2017 WL 9620421, at \*16 (N.D. W. Va. Dec. 6, 2017) ("communication which falsely imputes a crime is actionable per se"). Even falsely stating the number of times a person has been convicted of a felony suffices as defamation per se in West Virginia. *Richard H. v. Rachel B,* 2018 WL 2277775, at \*1 (W. Va. May 18, 2018) (holding that the respondent defamed the petitioner because the petitioner "was not a five[-]time felon, but a three[-]time felon.").

Trump Jr. disingenuously suggests that he could have used various adjectives or phrases that purportedly would have had the same gist or sting as "felon." First, Trump Jr. deliberately chose to use "felon" instead of the alternative monikers. Second, the hypotheticals would require the

Court of Appeals to immerse in conjecture. Third, the tortuous description of Blankenship as "the coal executive who served a year in prison for conspiring to violate mine safety standards at a mine that exploded causing the deaths of 29 people" is defamation by innuendo. Fourth, and most importantly, Trump Jr. could have truthfully tweeted that Blankenship was a misdemeanant.

The effect on the mind of the viewer is generally a jury question. *See Bustos v. A&E Television Networks,* 646 F.3d 762, 767 (10th Cir. 2011)("Unsurprisingly, deciding the materiality of a falsehood often requires a jury. Whether a particular misstatement is likely to injure the plaintiff's reputation in the mind of a reasonable member of the community is often best decided by reasonable members of the community."); *See also Kaelin v. Globe Commc'ns Corp.,* 162 F.3d 1036, 1040 (9th Cir. 1998)("[s]o long as a publication is reasonably susceptible of a defamatory meaning, a factual question for the jury exists.").

Trump Jr. called Blankenship a "felon." Blankenship has never been convicted of a felony. In West Virginia, the false imputation of a felony is actionable as defamation per se. West Virginia law controls. Consequently, Trump Jr.'s substantial truth argument is invalid.

19

### B.    Intent to injure

The defamatory reply tweet falsely attributed a felony conviction to Blankenship and is thus actionable as defamation per se. *See Milan,* 88 S.E. at 619. "[W]here words are actionable per se, the person defamed need not aver or prove special damages or a resulting injury." *Henick v. Fast-Track Anesthesia Assocs., LLC,* 2012 WL 5908939, at *6 (W. Va. Nov. 26, 2012). The law implies that general damages "are the natural and probable consequence of the words so spoken or written." *Milan,* 88 S.E. at 618. Likewise, Trump Jr.'s intent to injure Blankenship can be inferred from his usage of the word "felon."

Trump Jr.'s "failure to provide intent to injure" argument is ultimately pointless. If the Court of Appeals finds there is sufficient evidence of actual malice, then it is axiomatic that Trump Jr. intentionally published an injurious falsehood about Blankenship. If not, then intent to injure is immaterial.

Needless to say, being stigmatized as a "felon" on Twitter by the son of POTUS was a blow to Blankenship's campaign. Trump Jr.'s tweets were blood sport politics. His intention was to "take out Blankenship."

JA206. It was Trump Jr.'s kill shot.[6]

## III.  THE COURT OF APPEALS IS NOT CONSTRAINED BY UNJUST LAWS.

The actual malice regime poses a clear and present danger to our democracy. Public discourse is polluted with defamatory falsehoods that disinform voters, alter elections outcomes, intensify polarization, and incite unrest. A representative government cannot be sustained unless the electorate receives accurate information about election candidates and retains confidence in election fairness. The January 6, 2021, insurrection at the United States Capitol warns us how rampant disinformation can trigger a national crisis.

As Thomas Jefferson wrote to Thomas Paine, "I consider a trial by jury to be the only anchor every yet imagined by man, by which a government can be held to the principles of its constitution."[7] Summary judgment, as applied in public figure defamation cases, has degenerated

---

[6] Blankenship advised Trump Jr. by tweet that Blankenship had never been convicted of a felony. Still, Trump Jr. did not retract the defamatory reply tweet until after the primary election in June 2018. Trump Jr.'s refusal to timely retract the defamatory reply tweet is further evidence of actual malice.

[7] https://founder.archives.gov/documents/Jefferson/01-15-02-0259.

into a trial by depositions and/or affidavits. The "reasonable jury standard" is merely a proxy for the judge's own view of the sufficiency of the evidence. Tragically, the Seventh Amendment right to a trial by jury is all but extinct in public figure defamation cases.

A Nazi judge case during the Nuremberg trials elucidates the importance of judicial independence. Franz Schlegelberger served as a judge in Germany's Ministry of Justice from 1931-1942.[8] He wrote books on the law and was called "the last of the German jurists." *Id.* Schlegelberger's wrongful judicial actions were characterized as "hesitant injustices." *Id.* In his defense, Schlegelberger argued that he was obliged to follow Adolf Hitler's orders as Hitler was the "Supreme Judge" of German law. *Id.* Despite sympathizing with Schlegelberger's plight, the trial tribunal found him guilty. *Id.*

Respectfully, Blankenship does not equate the district court's ruling with the atrocities of a Nazi judge. There is no comparison between defamation and genocide. However, there are analogies that evoke discussion. Hitler's laws violated the human rights of Jews. The actual

---

[8]    Law2.umkc.edu/faculty/projects/ftrials/Nuremberg/Alstoetter.htm#. Commentary.

malice test deprives public figures of equal justice under law and security of reputation, both of which are natural rights. Schlegelberger defended unjust rulings by arguing that he was following German law. Similarly, the district court rationalized the application of legal standards which are incompatible with the Constitution.

Thomas More, the patron saint of lawyers, was beheaded for not assenting to an unjust oath that conflicted with this religious beliefs. Suffragist Susan B. Anthony was convicted of a felony for violating an unjust law that forbade women the legal right to vote. The unjust internment of Japanese Americans during World War II was upheld in *Korematsu v. United States,* 323 U.S. 214 (1944). The unjust "separate but equal" doctrine of *Plessy v. Ferguson,* 163 U.S. 537 (1896), was "binding precedent" until being struck down 58 years later in *Brown v. Board of Education,* 347 U.S. 483 (1954). These are just a few examples of the judicial enforcement of unjust laws.

To quote Dr. Martin Luther King:

> There are two types of laws: just and unjust. I would be the first to advocate obeying just laws. One has not only a legal but a moral responsibility to obey just laws. Conversely, one has a moral responsibility to disobey unjust laws. I would

agree with St. Augustine that "an unjust law is no
law at all.[9]

Dr. King, like Blankenship, was charged with but not convicted of felony charges after criticizing the government. Would the *Sullivan* Court have made the same decision if Dr. King was defamed as a "felon" by segregationist L. B. Sullivan? The judiciary must summon the resolve to interpret the law as written, not make the law. And refuse to validate unjust laws by affirmation.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Date: August 16, 2023                    Respectfully submitted,

                                          /s/ Jeffrey S. Simpkins
                                          Jeffrey S. Simpkins
                                          SIMPKINS LAW OFFICE PLLC
                                          102 East Second Avenue
                                          Williamson, West Virginia 25661
                                          304.235.2735
                                          simpkinslawoffice@gmail.com

                                          *Counsel for Plaintiff-Appellant*

---

[9] https://www.africa.upenn.edu/Articles_Gen/Letter_Birmingham.html.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Rule 34(a)(1) of the Federal Rules of Appellate Procedure and Rule 34(a) of the Local Rules of the United States Court of Appeals for the Fourth Circuit Internal Operating Procedures, Blankenship reiterates his prior request for oral argument. This appeal presents important and timely questions concerning defamation jurisprudence. First, Blankenship avers that the district court erred by improperly making credibility determinations, weighing the evidence, and drawing impermissible inferences in favor of Trump Jr. Second, Blankenship addresses the need to reform the summary judgment standard in public figure defamation cases. Third, Blankenship challenges the constitutionality of *New York Times Co. v. Sullivan,* 376 U.S. 254 (1974). Blankenship also disputes that the Court of Appeals is constrained by unjust laws. A robust discussion of this appeal during oral argument will substantially assist the Court of Appeals in understanding the nuances of the evidentiary record and legal averments.

Date: August 16, 2023                          /s/ Jeffrey Simpkins
                                                Jeffrey Simpkins

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 4,599 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, font size 14.

/s/ *Jeffrey S. Simpkins*
Jeffrey S. Simpkins
SIMPKINS LAW OFFICE PLLC
102 East Second Avenue
Williamson, West Virginia 25661
304.235.2735
simpkinslawoffice@gmail.com